State, Harmed, pros., v. Manning.

---

STATE, ISAAC S. HARMED ET AL., PROSECUTORS, v. JOHN MANNING, COLLECTOR OF PERTH AMBOY.

1. Delay in reviewing taxes by *certiorari* may be excused by the neglect of public officers in enforcing collection, when parties are induced thereby to believe that they will not be enforced because of admitted illegality.

2. Reference in the description of lands to blocks and lots on a map which is used as an assessor's map, though not formally adopted by the common council, will be sufficient, where it does not appear that the owner was misled.

.3. The mere form of assessment on the duplicate, required by the statute, is directory to the officer, and taxes will not be set aside for variations or omissions.

4. There is no legal objection to assessing the deficiency of a preceding year in the next, nor any limitation of the amount, if there is no restriction in the charter.

5. The prosecutor assumes the burden of proving the general taxes assessed against him to be illegal, and every presumption is in favor of the legality of such taxation.

---

On *certiorari*. In matter of taxation.

The writ of *certiorari* and return bring to this court the taxes of the prosecutors, residents of Perth Amboy, for the years 1874, 1875 and 1876, and their legality is contested.

Argued at February Term, 1879, before Justices DALRIMPLE, DEPUE and SCUDDER.

For the prosecutors, *W. C. Spencer* and *B. Williamson*.

For the defendant, *J. W. Beekman* and *A. V. Schenck*.

The opinion of the court was delivered by

SCUDDER, J.   The tardiness of the city authorities of Perth Amboy in attempting to collect the taxes of the prosecutors, has excused the delay in bringing this writ to review the assessments made.   Want of diligence on the part of the public officers may have induced the belief that they considered the taxes illegal and uncollectible, and hence did not proceed to enforce their collection.

For some reason the city authorities have been remiss in the performance of their duty in collecting these taxes, and are not in a position now to object that the prosecutors have been slow in reviewing their assessments.   If they had been vigilant and prompt in the performance of their duty, there is no doubt that this issue would have been sooner raised.

The several reasons assigned for setting aside these taxes will be considered in their order.

The first relates to the description of the properties assessed, and their reference to a plot or plan.   The form of the assessment in the duplicate is, first, the name of the owner of the land assessed ; next, the number of block ; then, number of lot, the valuation and amount of tax.   This form is observed in all the entries on the duplicate, excepting in those cases where there are charges of $2 only, for poll tax.   It is objected that this description is too vague and uncertain, and that the reference made is to a map which was not filed until 1877, after the taxes were assessed.   The ordinance approved July 20th, 1877, adopts the map called " Assessors' Map of the City of Perth Amboy," made by J. B. Culver & Co., in 1867, as altered and amended.

This is all the evidence we have on this point.   From this it appears that there was a map, called an assessors' map, prior to these assessments under review, which was subsequently amended and formally adopted.   It does not appear whether it had been recognized by any formal action of the council, before the amendments were made, nor what those amendments were.   But it is enough that there was a map on which the lands of the prosecutors were laid out in blocks and lots,

and there is no proof to show that they had not access to it—that they were ignorant, or misled, or could not learn the land for which they were assessed, by the reference given. It is the common form of description in cities to give the numbers of the block and lot where there are assessors' maps, and the fact that the councils have not formally adopted them does not affect the certainty of the reference, or the substantial rights of the parties, unless they are misled or injured. It does not appear that the description used was not sufficient to identify the real estate assessed. It is no error to assess land in cities by blocks and lots, or either, where it does not appear that the owner has been prejudiced or deceived by such form. *State, Paulison, pros.,* v. *Taylor,* 6 *Vroom* 184.

The mere form of the assessment is directory to the officer, and taxes will not be set aside for variation on the duplicate of the forms prescribed by the statute.

The next objection is that part of the taxes levied and assessed in the year 1874 was for the deficiencies of previous years. It appears by the return that an ordinance was passed July 27th, 1874, providing for the assessment and collection of deficiencies, for different purposes, including roads and streets, board of health, contingent expenses, pound, printing, &c.—all for legitimate purposes. When or how these deficiencies arose does not appear. If, from any cause, there was not sufficient money raised to pay the current expenses of the year, there would seem to be no legal objection to assessing the deficiency in the next year, if there is no restriction in the charter, of the amount that may be assessed. Such deficiency represents an unpaid debt of the city, and if the council have miscalculated the amount that would be needed to pay the expenses, or if they have failed to collect sufficient, they should make some provision to pay the debt which has been incurred.

It has been held that even a misappropriation of corporate funds cannot render a subsequent tax illegal, though levied for the very purpose of meeting the deficiency thereby caused. *Cooley on Taxation* 548, citing *Wright* v. *Dunham,* 13 *Mich.*

414. Much more will this be true where there is a mere miscalculation in the amount required for the expenses of a preceding year, and we are not authorized, without proof, to presume that the deficiency was caused in any other way. But there is no evidence that the amount of this deficiency was assessed and included in the prosecutors' tax for 1875. It is not enough to show that the ordinance was passed; it must also appear that the tax was actually imposed on the property of the prosecutors, and that it forms part of the tax of which they complain.

The objection that the rates of taxation for the year 1876 for city purposes, are in excess of the amount allowed by law and the charter, is not established by any proof.

Section forty-four of the charter, (*Pamph. L.*, 1870, *p.* 1144,) limits the rate of taxation to fifteen mills on the dollar of the actual valuation of the property assessed, for all purposes, excepting obligations for war purposes and improvement bonds or stock. In addition to this rate, by section seventy-six, a tax may be raised sufficient to pay the interest on improvement bonds each year, and to constitute a proper sinking fund for any portion of said debt that may exist, which tax shall be in addition to any other tax authorized by that act. There is nothing in the return, or in any evidence taken, to show that these amounts, authorized by law, have been exceeded. No valuation of the taxable property of the city is given, nor the amount of the general rate imposed, nor what part is made up of these excepted items.

The prosecutors seem to suppose that by bringing the tax here for review they put upon the city the burden of showing that all the taxes assessed are free from legal exception, whereas the contrary rule obtains in assessments of taxes for general purposes, that every presumption is in favor of the regularity of the tax imposed, and the objector assumes the burden of proving their illegality.

Under section thirty-seven of the charter, the mayor and common council have power to pass ordinances for various purposes, among them to establish, regulate and control a day

and night police; to provide street lamps, and to light the streets either by gas or other material. By section forty-four it is enacted that it shall be lawful for the council to raise, by tax every year, so much money as they may deem expedient for the purpose of lighting the streets, and supporting a day and night police. With this authority the common council has passed two ordinances establishing police and lamp districts within the limits of Perth Amboy. It is objected that these ordinances are illegal. We have not considered them, for the reason that it does not appear in the return or proofs that the prosecutors have ever been taxed under these ordinances, or that they have been in any way injuriously affected by them. It is not in any way shown that there has ever been an attempt to enforce these ordinances against the prosecutors by imposing a tax on their property within the prescribed districts. In the absence of such proofs they have no cause of complaint against the ordinances.

In all these cases that have been presented to the court, the writs of *certiorari* should be dismissed, with costs.